**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| JAMES WALPOLE | CIVIL ACTION |
| VERSUS | |
| H&E EQUIPMENT SERVICES, INC., and HERC RENTALS, INC. | 3:26-77-SDD-SDJ |

# RULING

This matter is before the Court on the *Motion to Dismiss for Failure to State a Claim*[1] filed by Defendants H&E Equipment Services, Inc. ("H&E") and Herc Rentals, Inc. ("Herc") (collectively "Defendants"). Plaintiff James Walpole ("Walpole" or "Plaintiff") filed an *Opposition*,[2] to which Defendants filed a *Reply*.[3] After careful consideration of the parties' arguments and applicable law, the Court finds that the Defendant's *Motion* shall be GRANTED.

## I. FACTUAL ALLEGATIONS & PROCEDURAL BACKGROUND

This case involves a breach of contract dispute. In 1997, Plaintiff retired from his full-time employment as a controller for H&E due to a serious medical diagnosis.[4] Around this same time, Plaintiff entered into an unwritten retirement agreement with H&E, under which he would receive $1,500.00 a month with no expiration date specified (the "1997 Agreement").[5]

---

[1] Rec. Doc. No. 4.
[2] Rec. Doc. No. 12.
[3] Rec. Doc. No. 15.
[4] Rec. Doc No. 1-1, p. 3 ¶ V.
[5] *Id.*

On December 1, 2020, Plaintiff and H&E "formalized" the 1997 retirement agreement by executing a Letter Agreement (the "2020 Agreement") which classified Plaintiff as an independent contractor whose consulting services to H&E earned a fixed annual fee of $18,000, payable monthly.[6] In addition to providing that Plaintiff "shall continue to provide … the services as set forth in the [1997 Retirement Agreement]," the 2020 Agreement further stated that either party could terminate the contract "*without cause upon thirty (30) calendar days' written notice*."[7] The 2020 Agreement commenced on January 1, 2021.[8] Sometime in May 2025, Plaintiff received a written termination notice from H&E.[9] On June 5, 2025, Plaintiff received a final payment in the amount of $650.00, after which all payments from Defendants ceased.[10]

On December 12, 2025, Plaintiff filed the instant action in Louisiana state court alleging breach of contract and detrimental reliance based on Defendants' (1) failure to pay the full $1,500.00 owed on June 5,[11] and (2) wrongful cessation of their long-term financial obligations under both the 1997 and 2020 Agreements.[12] On January 20, 2026, Defendants removed to this Court, asserting federal diversity jurisdiction under 28 U.S.C. § 1332(a).[13] One week later, Defendants filed the instant *Motion to Dismiss*.[14]

---

[6] *Id* ¶ VI.
[7] *Id* ¶¶ VI-VII (emphasis added).
[8] *Id.* ¶ VII.
[9] *Id* ¶ VIII. Subsequently, on June 2, 2025, Plaintiff received a letter from Herc advising that it had acquired H&E and would "manage the previous business relationship [Plaintiff] had with H&E."
[10] *Id* ¶ IX.
[11] *Id.*
[12] *Id.* ¶ XIII. *See also Id* ¶ XVI ("The Defendants' actions constitute a Breach of Contract (both the original non-expiring agreement and the 202[0] Letter Agreement.")).
[13] Rec. Doc. No. 1, p.1.
[14] Rec. Doc. No. 4.

## II. LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[15] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[16] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[17] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[18]

A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[19] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[21] "Furthermore, while the court must accept well-pleaded facts as true,

[15] *In re Katrina Canal Breaches Litig*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[16] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[17] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (internal citation omitted).
[18] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).
[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted) (hereinafter "*Iqbal*").
[20] *Id.* at 663.
[21] *Iqbal*, 556 U.S. at 678.

it will not 'strain to find inferences favorable to the plaintiff.'"[22] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[23]

## III. LAW & PARTIES ARGUMENTS

Plaintiff's claims in this action are governed by Louisiana substantive law.[24] To prove breach of contract under Louisiana law, a plaintiff must show: "(1) the existence of a contract; (2) a party's breach thereof; and (3) resulting damages."[25] In other words, "[a] breach of contract occurs when a party fails to perform in accordance with the contract terms, which failure results in damages to the other party."[26]

Plaintiff alternatively pleads detrimental reliance. To establish detrimental reliance, a party must show: "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance."[27] The doctrine of detrimental reliance is deigned to prevent injustice by barring a party from taking a position contrary to his prior acts or representations.[28] Nonetheless, the Louisiana Supreme Court has cautioned that "it is difficult to recover under the theory of detrimental reliance, because estoppel is not favored in Louisiana law."[29]

### A. Defendant's Arguments

Defendants first argue that Plaintiff has failed to allege sufficient facts showing H&E

[22] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[23] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[24] *Salve Regina College v. Russell*, 499 U.S. 225, 226 (1991) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) (a federal court sitting in diversity applies the substantive law of the forum state)).
[25] *Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 283 (5th Cir. 2023).
[26] *Porbeck v. Indus. Chems. (US)*, 134 So.3d 234, 237 (La. App. 3 Cir. 2014).
[27] *Luther v. IOM Co. LLC*, 130 So.3d 817, 825 (La. 2013).
[28] *Doss v. Cuevas*, 985 So.2d 740, 743 (La. App. 1 Cir. 2008).
[29] *La. Off. of Risk Mgmt. v. Richard*, 125 So.3d 398, 402 (La. 2013) (citing *Doss*, 985 So.2d at 743)).

failed to perform its obligations under the contract at issue. Specifically, Defendants contend that Plaintiff's allegations confirm that its actions complied with the termination provisions of the 2020 Agreement, which memorialized the 1997 Agreement.[30] Further, Defendants argue that Plaintiff fails to show that the May 2025 termination notice he received was provided less than 30 days before the June 5 payment of $650.00 such that Defendants had an obligation to tender payment on that date.[31] Likewise, Defendants note that Plaintiff has not shown the 2020 Agreement provides for a final payment of $1,500.00 upon termination, or that the $650.00 payment was otherwise inconsistent with its terms.[32]

Second, and to the extent Plaintiff bases his breach of contract claim on the 1997 Agreement, Defendants urge that the facts alleged show neither "the existence of the oral agreement [n]or [its] continued existence following execution of the [2020] Agreement."[33] More specifically, Defendants argue because Plaintiff alleges the 2020 Agreement was intended to "memorialize" the 1997 Agreement, the addition of a termination provision in the former effectively extinguished the latter's "un-expiring" obligation.[34] Alternatively, and assuming the original terms of the 1997 Agreement preempt any additions made in its 2020 memorialization, Defendants argue that Plaintiff has nevertheless failed to show that its May 2025 notice was insufficient (i.e., unreasonable) to cause its termination.[35]

Lastly, as to Plaintif's detrimental reliance claim, Defendants contend that, given the 2020 Agreement, any subsequent reliance on an "extra-contractual promise of

---

[30] Rec. Doc. No. 4-1, p. 7.
[31] *Id.* at p. 8.
[32] *Id.*
[33] *Id.*
[34] *Id.* at p. 9.
[35] *Id.*

continued, indefinite payment" would be unreasonable.[36] Put another way, Defendants urge that "a plaintiff's reliance is unreasonable as a matter of law 'when the parties have a valid contract defining their rights and limiting the ways in which the contract may be modified."[37]

As to Plaintiff's contractual claim, Defendants argue no allegation is made to support the existence of any obligation on Herc to provide the $1,500.00 monthly payments. Defendants contend that Herc's June 2 letter vaguely stating "that it would 'manage the previous business relationship [Plaintiff] had with [H&E]' is insufficient to show a separate, subsequent agreement existed between Plaintiff and Herc."[38]

B. Plaintiff's Arguments

Plaintiff responds that any suggestion of the 2020 Agreement superseding the terms of the 1997 Agreement is premised on a factual determination of novation which would be inappropriate at the pleading stage.[39] More specifically, Plaintiff contends that Defendants' argued novation would require showing a clear and unequivocal intent by Plaintiff—which is absent here—to extinguish the original payment "*for life*" obligation by substitution of a new terminable *without cause* arrangement.[40] Thus, Plaintiff maintains that the 2020 Agreement was "merely intended to 'memorialize' the payment arrangement, not to extinguish the underlying 'for life' nature of the retirement benefit."[41] Even so, Plaintiff notes that whether the thirty (30) day termination provision in the 2020 Agreement "was intended to apply to the *method of payment* or to the *existence* of the

[36] *Id.* at pp. 10-11.
[37] *Id.* at p. 10 (citing *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1330 (5th Cir. 1994).
[38] *Id.*
[39] Rec. Doc. No. 12, p. 3.
[40] *Id.*
[41] *Id.* at p. 4.

retirement benefit" is a question of fact regarding the parties' intent."[42] For that reason, Plaintiff maintains that the Court must accept his allegation that Defendants' monthly payment obligation was "non-expiring."[43]

As to Defendants' argument that the May 2025 termination notice was sufficient to terminate the 1997 Agreement, Plaintiff responds, without citation to any authority, that "what constitutes 'reasonable notice' is a fact-intensive inquiry dependent on the nature of the contact and the reliance of the parties."[44] Plaintiff thus contends that a thirty (30) day notice of termination could be found a "commercially unreasonable" method of ending a "specific income stream" that a retiree has relied upon for nearly 30 years.[45]

With respect to Defendants' argument concerning detrimental reliance, Plaintiff contends that his reliance began when, notwithstanding his medical diagnosis, "he retired based on [H&E's] promise of payments 'with no expiration date.'"[46] Thus, Plaintiff contends the 2020 Agreement cannot retroactively render [his] decision to retire in 1997 "unreasonable."[47]

Lastly, Plaintiff argues that at the pleadings stage, the Court must accept Herc's representation that it would "manage the previous relationship" as an admission of assumed liability."[48] Plaintiff contends that he has plausibly alleged that, by its own written admission, Herc has taken over management of H&E's business obligations. Thus, in his view, whether the term "management" includes assumption of the debt is a factual matter

---

[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.* at p. 5.
[47] *Id.*
[48] *Id.* at p. 6.

to be determined through discovery."[49]

## IV. ANALYSIS

The Court notes from the outset that Plaintiff has attached neither the 2020 Agreement, the May 2025 termination notice, nor Herc's June 2 letter to his *Complaint*. To be sure, "[t]he Federal Rules of Civil Procedure do not require [a] plaintiff alleging breach of contract to attach a copy of the contract in question to his Complaint."[50] That said, the relevant terms of the contract must be adequately described in order to meet Rule 8's pleading requirements—there is no requirement for Plaintiff to quote each relevant provision verbatim.[51] The Court finds that Plaintiff's *Petition for Damages* satisfies this standard. The same is true for the content of both the May 2025 notice and June 2 letter, which the Court finds are adequately described and, in relevant part, undisputed.[52]

### A. Breach of Contract

Turning to the merits, it is clear from the Plaintiff's allegations that by "formaliz[ing]" the verbal 1997 Agreement in writing, the 2020 Agreement became the operative contract between the parties. Indeed, "[w]hen parties reduce their contracts to writing and the writing exhibits no uncertainty or ambiguity as to the nature, the object, and the extent of the agreement, it is presumed that the writing expresses the true and complete

---

[49] *Id.*
[50] *Perrin v. Smith*, 2013 WL 12190190, at *2 (S.D. Tex. Apr. 9, 2013).
[51] *See United Specialty Ins. Co. v. Meridian Mgmt. Grp., Inc.*, 2015 WL 4718998, at *2 (N.D. Cal. Aug. 7, 2015) (internal citations omitted) (stating, "[c]laims involving contractual language are generally dismissed for want of detail only where the complaint fails to identify and describe the provisions on which the right to recovery is based.").
[52] *See Cruz v. Williamson Cnty., Tex.*, 2025 WL 3767534, at * (W.D. Tex. Dec. 30, 2025) (explaining that a "[p]laintiff may attach exhibits he believes are necessary to support his allegations, but he is not required to do so.").

undertaking of the parties."[53] Further, it is well-settled that a written agreement "supersedes all prior oral arrangements between the parties."[54] Plaintiff has not provided, and the Court could not locate, any authority to suggest that this principle of Louisiana contract law is made inapplicable by the length of time between a verbal agreement and its subsequent formalization in writing.[55]

As it is described in the four corners of the complaint,[56] the 2020 Agreement incorporates the material terms of the 1997 Agreement—namely the amount due monthly[57]—but adds that the payment obligation may be terminated "by either party 'without cause upon thirty (30) calendar days' written notice.'"[58] Because the 2020 Agreement did not extinguish H&E's material obligations (i.e., to make monthly payments of $1,500.00 for an unstated duration) it is not a novation, which is "the extinguishment of

---

[53] *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 275 (5th Cir. 1987) (quoting *Campo v. LaNasa*, 173 So.2d 365, 369 (La. App. 4th Cir. 1964), *writ denied*, 247 La. 874 (1965)).

[54] *Daily States Pub. Co. v. Uhalt*, 169 La. 893, 901 (1930); *Bourgeois v. Kirkland*, 399 So.2d 1203, 120 (La. App. 1 Cir. 1981) (internal citations omitted) ("A written contract evidences the complete understanding of the parties and superseded prior verbal agreements leading up the perfection of the written contract.").

[55] Even so, Plaintiffs desired interpretation would have the Court find the 2020 Agreement, although intended to formalize the 1997 Agreement, would co-exist with, rather than supersede, its terms. Thus, the parties would have two agreements governing the exact same monthly performance, H&E's payment of $1,500.00. Notwithstanding this unnatural result, "[t]he rule of contracts presumes the latter contract supersedes the earlier contract." *Jones v. Buck Kreihs Marine Repair, LLC*, 421 So.3d 202, 207-08 (La. App. 4th Cir. 2025). Plaintiff, however, identifies no facts to suggest the 2020 Agreement was intended to have any other effect with respect to the verbally-made 1997 Agreement. To the contrary, Plaintiff's use of the word "formalize" to describe the purpose of the 2020 Agreement suggests that its purpose was to give the 1997 Agreement its final form. *Formalize*, MERRIAM WEBSTER DICTIONARY (12 ed. 2025).

[56] *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011) (stating that a court reviewing a motion to dismiss is generally limited to the four corners of the complaint).

[57] Defendants' argument that Plaintiff fails to allege facts showing the existence of the 1997 Agreement under La. Civ. Code article 1846, which outlines specific proof requirements for oral contracts in excess of $500, is unpersuasive. Rec. Doc. Nos. 4-1, p. 8; 15, p. 2. To start, Plaintiff may serve as his own witness in fulfilling the requirement in art. 1846 for "at least one witness." *Belanger v. Spencer H. Calahan, LLC*, 324 So.3d 152, 162 (La. App. 1 Cir. 2021) (internal citations omitted). Further, while the requirement for "other corroborating circumstances" must come from a source other than that party, they need only be general in nature and independent proof of every detail of the agreement is not required. *Id.* The Court is satisfied that H&E's longtime conformity with the terms of the alleged 1997 Agreement, coupled with the express assumption of those same terms in the 2020 Agreement (neither of which is disputed), constitutes sufficient corroboration of the 1997 Agreement's existence.

[58] Rec. Doc. No. 1-1, ¶¶ VI-VII.

an existing obligation by the substitution of a new one." [59] Instead, the 2020 Agreement merely adds a specific provision for terminating the payment obligation, something which—as Defendants explain—would otherwise be governed by the default provision in La. Civil Code art. 2024, providing "[a] contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party."[60]

Plaintiff has thus failed to plead facts sufficient to support his claim that either H&E or Herc were obligated to continue monthly payments under the 1997 Agreement (as formalized in the 2020 Agreement) following H&E's issuance of the May 2025 termination notice. There is no allegation that H&E's termination notice failed to adhere to the express provisions of the 2020 Agreement.[61] Further, Plaintiff fails to plead facts from which it can be reasonably inferred that Defendants were obligated to tender a final payment of $1,500.00 on June 5 or any other date following the issuance of the termination notice. While it is certainly possible that a final payment was due following the issuance of H&E's termination notice or upon the 2020 Agreement's termination, generally, Plaintiff pleads no facts to move this claim from the realm of "possible" to "plausible."[62] Notably, Plaintiff does not provide the date of H&E's May 2025 termination notice. Thus, the Court is

---

[59] La. Civ. Code 1879.

[60] Plaintiff's attempt to add ambiguity to the 2020 Agreement's termination provision by suggesting a fact issue exists on whether it applies to the method of payment or existence of the retirement benefit, generally, is unpersuasive. It is axiomatic that "the fact that one party creates a dispute about the meaning of a contractual provision does not render the provision ambiguous." *Ardaman & Assoc., Inc. v. French Engineering, Inc.*, 425 So.3d 314, 320 (La. App. 2 Cir. 2025). This applies with added force where, as here, the termination provision's intended meaning is clear from the Plaintiff's own description of its terms and, in any event, any contractual language which might support Plaintiff's alternative meaning is not pleaded. Thus, the Court concludes that Plaintiff does not plead sufficient facts from which his asserted ambiguity in the 2020 Agreement's termination provision can be reasonably inferred.

[61] While Plaintiff notes that the notice letter was sent via certified mail to an address he vacated in March 2021, he makes no contention that the notice provided was legally insufficient or otherwise defective under the 2020 Agreement.

[62] *See Iqbal*, 556 U.S. at 678 ("it stops short of the line between possibility and plausibility of entitlement to relief.")

unable to determine whether it was issued less than thirty (30) days before June 5 such that payment might have come due prior to the 2020 Agreement's effective termination date.[63]

Because Plaintiff cannot sustain his breach of contract claim upon either the verbal 1997 Agreement or the 2020 Agreement, it follows that he has failed to state a claim against H&E on those grounds. The same result is required with respect to Herc. "Generally, when one [entity] sells all of its assets to another, the latter is not responsible for the seller's debts or liabilities."[64] That said, Plaintiff argues that an exception to this rule applies because Herc's June 2 letter, representing that it would "manage the previous business relationship Plaintiff had with H&E,"[65] must be accepted as "an admission of assumed liability."[66] But Plaintiff provides no authority to support that a successor entity acknowledging and agreeing to manage a predecessor's obligations constitutes assumption of liability for same. There is a distinction between the acknowledgement of an obligation and agreeing to become answerable for its discharge. Plaintiff has failed to plead facts sufficient to demonstrate Herc's June 2 letter was intended to be anything more than the assumption of an administrative role managing the contractual relationship between H&E and Plaintiff. Similarly, Plaintiff fails to show that the June 2 letter created a separate and distinct agreement between himself and Herc— incorporating the terms of the 2020 Agreement—which is now enforceable against Herc independent of any breach alleged against H&E.

---

[63] A finding to the contrary, on the current pleadings, would be an "unwarranted deduction." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).
[64] *Giles v. Oak Lane Memorial Park, LLC*, 290 So.3d 685, 695 (La. App. 1 Cir. 2019).
[65] Rec. Doc. No. 1-1, ¶ XV.
[66] Rec. Doc. No. 12, p. 6. Indeed, Louisiana courts recognize that where "the purchaser expressly or impliedly agrees to assume the [seller's] obligations," the general rule against categorical successor liability gives way. *Monroe v. McDaniel*, 207 So.3d 1172, 1180 (La. App. 5 Cir. 2016) (internal citations omitted).

B. Detrimental Reliance

As an initial matter, Louisiana jurisprudence has recognized that "detrimental reliance usually comes into play when no written contract exists or the contract is found to be unenforceable."[67] Such is not the case here.

Even if the Court were to consider the merits of this claim, it would fail. Plaintiff fails to plead facts sufficient to demonstrate a "justifiable reliance" upon either the 1997 or 2020 Agreements. In his *Petition for Damages*, Plaintiff represents that his 1997 retirement from H&E was prompted by "a serious medical diagnosis."[68] Plaintiff's *Opposition*, however, states for the first time that "he retired based on the promise of [H&E's] payments."[69] The Court resolves this discrepancy in favor of the *Petition* because at this stage of the litigation, it is the factual allegations therein that control.[70] In any event, the plain language of Plaintiff's *Petition* suggests that he approached H&E leadership regarding retirement benefits after he had already "retired from full-time work."[71] Thus, the Court need not determine whether Plaintiff justifiably relied, if at all, on the 1997 Agreement in deciding to retire; that is not what is pleaded.

Plaintiff similarly fails to allege facts sufficient to show that, notwithstanding the 2020 Agreement's termination provision, his continued reliance on the 1997 Agreement's provision for monthly payments to continue "with no expiration date" was justifiable.[72] To start, the Court finds that these terms are not inherently inconsistent—an agreement providing for monthly payments for an indefinite term is terminable by operation of La.

[67] *Boes Iron Works, Inc. v. Gee Cee Group, Inc.*, 206 So.3d 938, 952 (La. App. 4 Cir. 2016).
[68] Rec. Doc. No. 1-1, ¶ V.
[69] Rec. Doc. No. 12, p. 5.
[70] *Stepps v. Bd. of Trs. of Univ. of Ark.*, 2022 WL 4086647, at *1 n.4 (E.D. Ark. Sep. 6, 2022).
[71] Rec. Doc. No. 1-1, ¶ V.
[72] Rec. Doc. No. 12, p. 4 n.3.

Civ. Code art. 2024. But Plaintiff alleges no facts to suggest that, despite this clear and consistent language, the parties could not actually terminate the 2020 Agreement and thus extinguish the terms it memorialized from the 1997 Agreement. To the extent Plaintiff relies on the 1997 Agreement itself to justify any such reliance, it is axiomatic that a "[w]ritten contract supersedes all prior oral arrangements."[73] Plaintiff's somewhat confusing suggestion that the 2020 Agreement cannot waive his detrimental reliance claim because "it constitutes a contract of adhesion" is unpersuasive and, absent any factual support or legal analysis, presents a legal conclusion insufficient to defeat a well-pled motion to dismiss.[74]

Plaintiff fails to state a detrimental reliance claim against H&E. For the same reason Herc has not been shown to have successor liability for any alleged breach of contract perpetrated by H&E, that same principle applies to Plaintiff's detrimental reliance claim.

C. <u>Injunctive Relief</u>

The Court, having concluded that Plaintiff's underlying claims fail, hereby DENIES Plaintiff's request for injunctive relief.[75]

D. <u>Non-Pecuniary Damages</u>

Similarly, because the recovery of nonpecuniary damages is predicated on the breach of a contract intended to gratify a nonpecuniary interest,[76] Plaintiff's request for nonpecuniary damages is DENIED.

---

[73] *Uhalt*, 169 La. at 901.
[74] *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017).
[75] *See Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 n.15 (5th Cir. 2012) ("[A] request for injunctive relief absent an underlying cause of action is fatally defective."); *Maldonado v. Wells Fargo Bank, N.A.*, 2017 WL 4950063, at *4 (S.D. Tex. Nov. 1, 2017) ("[s]ince Plaintiff's substantive claims fail, so do his requests for injunctive and declaratory relief.")
[76] La. Civ. Code art. 1998.

E. Attorney's Fees

It is well-settled under Louisiana law that attorney's fees may be recovered only when authorized by statute or contract.[77] Plaintiff sets forth no facts suggesting the 2020 Agreement contained a provision for attorney's fees. Further, neither La. Civ. Code arts. 1994 or 1967—which supply the causes of action for breach of contract and detrimental reliance, respectively—provide for attorney's fees.[78] Plaintiff does not direct the Court to any other source, statutory or contractual, which would allow for attorney's fees in this action. Thus, Plaintiff's request for attorney's fees is DENIED.

## III. CONCLUSION

For the foregoing reasons, Defendants' *Motion to Dismiss*[79] is GRANTED and Plaintiff's claims for breach of contract and detrimental reliance are DISMISSED without prejudice.[80] Plaintiff shall have 30 days from the date of this Ruling to amend the deficiencies noted herein. Failure to do so will convert this dismissal to a dismissal with prejudice.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 27 day of August, 2026.

Shelly D. Dick

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[77] *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 763 (La. 1985).
[78] *See Radiofone, Inc. v. Pricellular Corp.*, 1993 WL 133830, at *8 (E.D. La. Apr. 16, 1993).
[79] Rec. Doc. No. 4.
[80] Plaintiff requests leave to amend in his *Opposition*. Rec. Doc. No. 12, p. 8. This is Plaintiff's first request to amend his complaint and, because leave to amend should be "freely given," Fed. R. Civ. P. 15(a)(2), the Court GRANTS Plaintiff's request for leave to amend.